UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-21685-BLOOM/Torres

PORFIRIO GARCIA,

      Plaintiff,

v.

WAREHOUSE 305 LLC, *et al.*,

      Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon two separate motions: (1) Plaintiff Porfirio Garcia's Motion for Partial Summary Judgment, ECF No. [51] ("Plaintiff's Motion"), and (2) Defendants Renato Viola ("Viola"), Umberto Mascagni ("Mascagni"), Warehouse 305 LLC ("Warehouse"), Wynwood 305 LLC ("Wynwood"), and Brickell 305 LLC's ("Brickell") Motion for Summary Judgment, ECF No. [55] ("Defendants' Motion"). Defendants filed a Response in Opposition to Plaintiff's Motion, ECF No. [60], to which Plaintiff filed a Reply, ECF No. [63]. Plaintiff also filed a Response in Opposition to Defendant's Motion, ECF No. [57], to which Defendants filed a Reply, ECF No. [59]. The Court has reviewed the Motions, all supporting and opposing submissions,[1] the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion is denied, and Plaintiff's Motion is denied.

---

[1] Plaintiff filed a Statement of Material Facts ("PSMF") in support of his Motion, ECF No. [52]. Defendants filed a Response in Opposition to Plaintiff's Statement of Material Facts ("OPSMF"), ECF No. [61], to which Plaintiff filed a Reply ("RPSMF"), ECF No. [62]. Defendants filed a Statement of Material Facts ("DSMF") with their Motion, ECF No. [56]. Plaintiff filed a Statement of Material Facts in Opposition to Defendants' Statement of Material Facts ("ODSMF"), ECF No. [62].

## I.  BACKGROUND

This is an action for uncompensated wages arising from Defendants' failure to pay Plaintiff for overtime work pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiff originally filed this action in state court and thereafter filed an Amended Complaint in state court prior to removal. ECF No. [1-1]. Defendants Brickell and Wynwood removed this action to this Court on May 4, 2023, based upon diversity of citizenship. *See generally* ECF No. [1].

Plaintiff's Amended Complaint alleges Defendants failed "to properly pay him at the rate of time and one-half for all hours worked in excess of forty (40) per workweek as provided in the FLSA." ECF No. [1-1] ¶ 17. Plaintiff accordingly asserts FLSA claims for unpaid overtime wages against Warehouse, Brickell, and Wynwood (Count I) and Viola and Mascagni (Count II).

Plaintiff's Motion argues the undisputed evidence establishes that Plaintiff is not exempt from the FLSA's overtime provisions, and Defendants failed to maintain time records for Plaintiff. Defendants respond that Plaintiff *is* exempt from the FLSA's overtime provisions because of the executive exemption.

Defendants' Motion contends the undisputed evidence establishes Plaintiff did not work overtime, and Defendants neither knew nor should have known Plaintiff worked overtime. Defendants also argue they are entitled to summary judgment because Plaintiff's deposition testimony establishes Plaintiff does not have viable overtime claims, and that Plaintiff testified he is not seeking damages for unpaid overtime. Plaintiff responds that the evidence supports the reasonable inference that Plaintiff worked unpaid overtime, and Defendants either knew or should have known Plaintiff worked unpaid overtime. Plaintiff also argues his deposition testimony did not waive his overtime claims nor his entitlement to damages for uncompensated overtime.

### A.  MATERIAL FACTS

Based on the Parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

### i.  Employment History

Defendants Viola and Mascagni own a chain of pizzerias known as "Mister O1", including Warehouse, Wynwood, and Brickell.[2]  PSMF ¶ 1; OPSMF ¶ 1; DSMF ¶ 3; ODSMF ¶ 3. In 2017, Plaintiff began working "as a dishwasher and cleaner on a[n] hourly basis at a Miami Beach restaurant owned by" Viola and Mascagni. DSMF ¶ 4; ODSMF ¶ 4. Plaintiff then began working at Wynwood on October 2, 2017 until September 12, 2021. DSMF ¶ 4; ODSMF ¶ 4. Plaintiff eventually started working in Wynwood's dough production department, but it is unclear when he began doing so. Plaintiff became a salaried employee when he began working in Wynwood's dough production department, but it is also unclear when Plaintiff transitioned from an hourly to a salaried employee. Plaintiff's payroll records reflect that he was a salaried employee in April 2019. *See* ECF No. [52-1] at 86.[3] The payroll records indicate Plaintiff's weekly pay rate ranged from $450.00 to $1,300.00 during the period of April 2019 – September 2021. *See generally* ECF No. [52-1] at 23-86.

---

[2] It is unclear whether Warehouse, Brickell, and Wynwood are pizzerias, or corporate entities that each operate several pizzerias. Defendants note Viola and Mascagni own "the defendant entities, which are all separate legal entities[,]" and that Viola and Mascagni own a total of "six pizzerias and six pizza franchises." DSMF ¶ 3. However, the Parties fail to specify whether Warehouse Brickell, and Wynwood are each a single "Mister O1" pizzeria, or whether Warehouse, Brickell, and Wynwood each operate several pizzerias at various locations. The record suggests Warehouse may be a "dough production center" used to supply Viola and Mascagni's pizzerias, *see, e.g.*, DSMF ¶ 4, but it is unclear. The Court will not comb through the Parties' deposition testimony to discern the precise contours of the corporate relationship between Viola, Mascagni, their six pizzerias and six pizza franchises, and Wynwood, Warehouse, and Brickell. Doing so is unnecessary in light of the Court's conclusion that whether Defendants violated the FLSA's overtime provisions constitutes a genuine dispute of material fact.

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Plaintiff began working in the dough production department at Warehouse on September 13, 2021. DSMF ¶ 4; ODSMF ¶ 4. Plaintiff performed the "same exact job" at Wynwood and Warehouse. PSMF ¶ 4; OPSMF ¶ 4. On September 3, 2021, Plaintiff and Viola signed an offer letter memorializing the terms of Plaintiff's employment at Warehouse. ECF No. [7-1] ("Offer Letter"). The Offer Letter provides Plaintiff's position "will be Quality Control Specialist reporting to the Warehouse Manager, Maximo Serra." *Id.* at 1. The Offer Letter also provides that Plaintiff's "salary, as an exempt employee, will be $1,200.00 per week which will be paid in accordance with the company's pay schedule, subject to any legally permissible deductions." *Id.* at 1. Plaintiff testified that he was a salaried employee and paid $1,200.00 per week while employed at Warehouse, ECF No. [50-1] at 9, but his payroll records indicate he was occasionally paid less.[4] *See generally* ECF No. [52-1] at 1-22. The Parties dispute whether Plaintiff was ever employed by Defendant Brickell.[5]

### ii. Plaintiff's Role

The nature of Plaintiff's role at Wynwood and Warehouse is also disputed. Viola testified that Plaintiff was "not [a] pizza maker. He was a manager executive in charge of the quality of the dough and in charge to supervi[se] the staff that was making the dough." ECF No. [54-2] at 32.

---

[4] Plaintiff's payroll records for both Wynwood and Warehouse are inconsistent. Plaintiff's Wynwood payroll records indicate he was initially paid $900.00 a week before eventually being paid $1200.00 a week. *See, e.g.*, ECF No. [52-1] at 86. However, some pay periods appear to cut Plaintiff's weekly pay rate in half, possibly because Plaintiff was unable to work or took time off. *See id.* at 83. Further, some of Plaintiff's payroll records reflect non-salary pay, labeled "MISCELLANEOUS (field 3)", which adds a few hundred dollars to some of Plaintiff's biweekly paychecks. *See id.* at [52-1] at 79. The nature of these payments is unclear. Plaintiff's Warehouse payroll records largely reflect a weekly rate of $1,200.00, but this rate was also occasionally reduced. For example, Plaintiff's payroll record from July 7, 2022 reflects a weekly rate of $600.00. *See id.* at 10. The document notes "YOUR SALARY RATE HAS BEEN CHANGED FROM 2,400.00 TO 1,200.00[,]" but offers no explanation as to why this occurred. *Id.* The Parties do not address these inconsistencies.

[5] Plaintiff provides no information regarding when he may have worked at Brickell, instead simply observing that "[t]here are no payroll checks from BRICKELL 305, or at least they were not produced[]" and "Defendants deny that GARCIA worked at BRICKELL 305." PSMF ¶ 2. For their part, Defendants contend "Plaintiff was never actually employed by Defendant Brickell." ECF No. [55] at 2.

Viola explained "Plaintiff was in charge of the most important department of the companies, namely, dough production. [Plaintiff's] job was the most important job, still today in this company, keep consistent the dough." ECF No. [54-2] at 71. Viola also testified that he would step in to supervise the employees producing the dough if Plaintiff was unavailable because "it's always important [to] hav[e] a supervisor to be consistent." *Id.* at 57. For that reason, Viola testified Defendants "don't allow the employee to do the dough without a supervisor." *Id.* Viola acknowledged dough production is physical work, but testified that Plaintiff's primary role was supervisory in nature:

> Q. So, to a certain extent, he worked with his hands, right? Actually creating the mix?
>
> A. No. Everything by hand. Now we have everything. We have gun with the temperature, you know, thermometer. We have everything now that is software.
>
> Q. I see. So then you add the flour, the yeast, the oil, the salt, and it's ready to mix?
>
> A. This is the job of Mr. Garcia's staff. They going to do the – the manual job. He need just to supervi[se] and not be distract[ed].

ECF No. [54-2] at 45.

> Plaintiff described his role in the dough production department as follows:
>
> Q. And when you say you were doing the whole production in that place, what did that involve?
>
> A. Well, it was the person – I was the person there that was supposed to have the obligation to do the whole production. But I was not supposed to have the obligation of fixing the mistake of people that were not capable of doing their job.

ECF No. [50-1] at 26. Plaintiff testified that this was an important role:

> Q. Okay. But as to you, did you think you were an important part of the company?
>
> MR. DAMMOUS: Object to form.
>
> THE WITNESS: Well, talking about the workforce, yes, I was an important person because I was doing the whole production. If there is no production,

> there is no business. Because why? Because I was supplying all the
> locations, I was supplying all his locations.

*Id.* at 45.

Regarding the relationship between himself and the other workers who prepared pizza

dough, Plaintiff testified:

> THE WITNESS: I had – yes, I was in charge of the whole production, but Mr.
> Renato [Viola] here, he decided to hire a company, and that company was bringing
> people to work, and I was – that they didn't know how to do certain things, and I
> was telling them in a good manner, things that they were not supposed to do, for
> example, don't toss the dough in that way, because that was something that Mr.
> Renato [Viola] didn't want [sic] to happen. But they were not doing it.

ECF No. [50-1] at 27. However, Plaintiff subsequently testified he did not consider himself

their supervisor:

> Q. And did you consider yourself as their supervisor?
>
> MR. DAMMOUS: Object to form.
>
> THE WITNESS: Well, I was not considering myself a supervisor. It was
> just a relationship between co-workers. That's what I considered that to be.
> I was not considering myself a supervisor.

ECF No. [50-1] at 28.

Plaintiff's relationship with Maximo Serra ("Serra")—who, according to Plaintiff's

Offer Letter, ECF No. [7-1], is Warehouse's "Manager"—is similarly unclear. Plaintiff

described their working relationship as follows:

> Q. Okay. And so did you consider yourself to be a co-worker or did you consider
> Maximo to be your boss or supervisor?
>
> MR. DAMMOUS: Object to form.
>
> THE WITNESS: Well, as I said before, we respect each other's social life.
>
> Q. Okay. Social life usually means things outside of work.
>                     Is that your understanding?
>
> A. Yes, that is correct.

6

> Q. So I am directing it at in the workplace, when you were working.
>
> A. Well, at work, each one of us had our own responsibility. For him was to order supplies and for me was production.
>
> Q. And did you think he could tell you what to do and instruct you to do things?
>
> > MR. DAMMOUS: Object to form.
> >
> > THE WITNESS: In a co-worker relationship, yes.
>
> BY MR. ELDER:
>
> Q. Could you instruct him and tell him to do things?
>
> A. In the life of production, I had more knowledge than him.
>
> Q. So did you sometimes instruct him on things?
>
> A. A hundred percent ….

*Id.* at 30-31.

Plaintiff later testified that he considered Serra and Grace Herrera ("Herrera"), who Plaintiff identified as the "secretary" who "has the whole control of the company[,]" *id.* at 32-33, to be his supervisors when he worked at Wynwood, and Serra was his supervisor at Warehouse:

> Q. Okay. And based on your definition of a supervisor, who was your supervisor when you worked with these gentleman here?
>
> A. In the last location where I worked, it was Max Sera, but he is not knowledgeable about how to treat the employee[s]. He was not capable of working as a supervisor.
>
> Q. And prior to that location, who was your supervisor?
>
> A. The gentleman that is present right here [Viola], that is the owner and Grace [Herrera] that was always attentive for any needs every day.

*Id.* at 34-35. When asked what types of issues Plaintiff typically discussed with Herrera, Plaintiff testified "[w]ell, because we were getting into making decisions [about] how much we were going to be making because I couldn't make decision[s] on my own." *Id.* at 33.

Viola also testified that Plaintiff was responsible for ensuring "the inventory was always perfect." ECF No. [54-2] at 34. However, Viola later testified Defendants did not initially keep inventory records at Wynwood or Warehouse:

> Q. Was there records kept to determine how much dough was available each day, either at Wynwood or Warehouse 305?
>
> A. Not in the beginning.
>
> Q. No records were kept? When – when did you start keeping records of how much dough you had available?
>
> A. Oh, when we moved in the – in the warehouse. Not in the beginning, the – doing our operation in the warehouse.

ECF No. [54-2] at 60-61. Viola then explained Plaintiff's role in maintaining inventory:

> Q. All right. So we're talking about the records. So when you were at Wynwood, you didn't keep inventory of how many – how much dough was available?
>
> A. My inventory record was for [Plaintiff].
>
> Q. He kept it in his head?
>
> A. He was excellent in this.
>
> Q. And what did he keep in his head in terms of inventory, if you know?
>
> A. He was organized, maybe he has his notebook, but honestly, we don't have the software that we have now. We have specific software today that specify in the inventory, sir. But at this time was [Plaintiff] take care of all the inventory, flour, his olive oil, and bag, whatever he – he – was under his department. And honestly, what I saw, [Plaintiff] also was very good with his memory, with his knowledge with, this experience.

*Id.* at 61-62. Viola concluded by noting Defendants subsequently "invest[ed] in a software[,] which "is keeping the inventory." *Id.* at 62. However, Viola was subsequently unable to describe how Warehouse tracked pizza dough inventory:

> Q. Yeah. Did you keep track of how much dough was going out to each restaurant?
>
> A. No, sir.

> Q. Well, how would you know how much to send to each restaurant? Was it because the restaurants asked for the dough?
>
> A. Yes. And I was believed in my trust person, [Plaintiff].
>
> Q. So when the restaurants asked for dough each week at Warehouse 305, did – was that recorded, how much dough – how much dough had gone out to each restaurant?
>
> A. I don't know, honest.

*Id.* at 65-66.

Serra also testified that Plaintiff managed the dough production department's inventory at Warehouse. When asked who was responsible for inventory at Warehouse, Serra answered "[t]he production center for [Plaintiff], and supplies and trucks, myself." ECF No. [54-1] at 26. Serra explained that "[e]very week [Plaintiff] would give us an order of the amount of flour and oil that he needed for production[,]" either orally or by writing a note "of the things that he needed." *Id.* at 27. However, Serra later testified that "[w]e did not keep inventory. We would make weekly orders." *Id.* at 29. When asked to clarify whether Defendants kept inventory at the Warehouse location during the period Plaintiff worked there, Serra testified "I don't know." *Id.* at 31.

For his part, Plaintiff testified that he did not assist in ordering flour or other ingredients for the dough. ECF No. [50-1] at 29. Plaintiff testified that Serra was responsible for managing inventory at Warehouse, not Plaintiff. *Id.* at 29-30. Regarding Wynwood, Plaintiff testified Herrera or Viola was responsible for inventory. *See* ECF No. [50-1] at 33.

### iii.  Plaintiff's Salary

As noted, Plaintiff testified that he was paid $1,200.00 per week, or $2,400.00 bi-weekly, at both Wynwood and Warehouse. *See id.* at 15. Plaintiff explained that this salary was intended to compensate him for all hours worked, including overtime:

> Q. And was it your understanding that you were supposed to be paid 2,400 biweekly no matter how many hours you work?

A. Yes.

Q. Okay. And it was your understanding that that was a fixed amount you were supposed to be paid?

A. Correct. We spoke about a salary. It was a respect between me and him.

Q. Okay. And so if, for example, you worked theoretically only 30 hours a week, you still were supposed to be paid 2,400 biweekly?

      MR. DAMMOUS: Object to form.

      THE WITNESS: (By witness) Perdón.

      THE INTERPRETER: I am going to repeat the question again.
          (Interpreter repeated the question).

      THE WITNESS: Yes, because it was an agreement, and it was a salary. We didn't speak about an hourly rate.

*Id.* at 17. Viola testified that, unlike Plaintiff, the other individuals who made pizza dough earned either $16.00 or $17.00 an hour. ECF No. [54-2] at 93.

### iv.  Plaintiff's Work Schedule

Plaintiff testified that because of his status as a salaried employee, he "didn't need to punch in or out." ECF No. [50-1] at 61. Plaintiff further testified that his typical workweek included working overtime at both Wynwood and Warehouse. Regarding his Wynwood work schedule, Plaintiff testified:

Q. Okay. And I asked you earlier whether you worked more than 40 hours when you worked only here. So I am going to now ask you, with regard to Wynwood, when you worked at Wynwood, did you ever work more than 40 hours per week?

A. I was getting there – I was getting there at 5:30 a.m. and leaving 6:00 p.m., and I was working seven days. So you can add and do the math right there.

Q. That's at Wynwood?

A. Yes, that's right.

*Id.* at 61-62. Plaintiff testified he also typically worked overtime at Warehouse:

> Q. Okay. And – and then you were – before you testified about the production schedule, my question was: When you worked at the Warehouse, did you ever work more than 40 hours a week?
>
> A. Always, always. I – I never can specify that I just worked for 40 hours. As I am going to repeat, there was not a set schedule to leave work.
>
> Q. Okay. And I understand that there was no set schedule. But did you ever work more than 40 hours a week at Warehouse?
>
> A. Yes, I worked more than 40 hours.
>
> Q. How many times?
>
> A. I wasn't – I could not tell you how many times because I was doing that constantly, always.

*Id.* at 63. Viola testified that Defendants consider Plaintiff to be "an executive, so he doesn't have [to] clock in and clock out." ECF No. [54-2] at 22. Viola and Serra each testified that Plaintiff did not work more than 40 hours per week while working at Wynwood or Warehouse. ECF No. [54-1] at 79; ECF No. [54-2] at 22-23. Viola estimated Plaintiff typically worked between 30-35 hours a week while working at Wynwood. ECF No. [54-2] at 22-23. Serra testified Plaintiff worked between 38-40 hours per week while working at Wynwood. ECF No. [54-1] at 79. Defendants did not keep track of the hours Plaintiff worked when he was a salaried employee. PSMF ¶ 18; OPSMF ¶ 18.

### v. Plaintiff's Overtime Claims

Plaintiff indicated he did not believe he was entitled to additional overtime compensation because he was a salaried employee:

> Q. Did you ever complain to Renato [Viola], Umberto [Mascagni], or anyone else at any of the companies that you felt that you were entitled to overtime pay when you were on a salary?
>
> MR. DAMMOUS: Object to form.
>
> THE WITNESS: We agreed [to] a salary. So we didn't need to discuss that.

BY MR. ELDER:

Q. Okay. So you didn't believe you were entitled to overtime pay when you were a salaried employee, correct?

      MR. DAMMOUS: Object to form.

      THE WITNESS: Respecting the laws – respecting the laws in this country, after 40 hours, the overtime needs to be paid. But unless you have a salary. But that salary, this gentleman right here didn't respect.

BY MR. ELDER:

Q. Okay. So – but because you were salaried, if they paid you your salary, you believed you were not entitled to overtime?

      MR. DAMMOUS: Object to form.

      THE WITNESS: Of course, yes. Of course, yes.

BY MR. ELDER:

Q. Do you believe you were entitled to overtime if you were paid your salary?

      MR. DAMMOUS: Object to form.

BY MR. ELDER:

Q. You can answer.

A. Well, when you agree – when we agreed – when we agreed on a salary, that was a salary, and that is the agreement. But then there was no explanation why he was not paying to me the whole complete salary. He never explained that to me.

Q. Okay. But my question is: When you entered into an agreement to be paid a salary, was it your understanding and agreement that, if that they [Defendants] paid that salary, you would not be paid overtime?

      MR. DAMMOUS: Object to form.

      THE WITNESS: By law you need – you need to respect what we talk about or we spoke about. When I was making a lot of hours, I told him that I will work hourly, and he didn't want it.

ECF No. [50-1] at 66-68.

Plaintiff also testified he never discussed overtime pay with Defendants:

Q. As you sit here today, do you recall ever telling anyone from the company that you felt you were entitled to overtime?

THE WITNESS: I haven't had any conversation with anyone about it.

*Id.* at 78. Plaintiff also indicated that he is seeking a missing $1,200.00 salary payment in this case rather than compensation for unpaid overtime work:

Q. What do you understand is the nature of your lawsuit?

A. Well, first of all, because Mr. Renato [Viola] agreed to pay me a salary, and lastly, he deposited me half of the salary that we agreed upon.

Q. Okay. Is there – is that what you are claiming in this case? Is there anything else?

A. Only my rights.

Q. Okay. So I want to clarify what you just said. Are you saying that he agreed to pay you a salary and he didn't pay the full amount he agreed?

MR. DAMMOUS: Object to form.

THE WITNESS: I am sorry. I didn't understand the question much.

BY MR. ELDER:

Q. Okay. I am asking you, what are you claiming that the people you sued in this lawsuit did you wrong?

A. Well, he didn't – he – he didn't give me any explanation why he was paying me half of the salary we agreed upon. And that is until I realized that he was depositing me just half of the salary, and that was the reason why I assumed that they were firing me on Thursday, July 21st, and I filed a lawsuit on 22nd of the same month.

*Id.* at 7-8.

## II. LEGAL STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 Fed. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn

from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

## III. DISCUSSION

The Parties both contend that the undisputed evidence establishes that they are entitled to judgment as a matter of law. Plaintiff argues that the undisputed evidence shows that he is not exempt from receiving overtime compensation under the FLSA, and Defendants failed to keep time records of Plaintiff's hours. Defendants argue that the undisputed evidence shows that Plaintiff did not work overtime hours without compensation, and Defendants did not know nor should they have known Plaintiff worked overtime. Defendants also contend that Plaintiff's deposition testimony establishes Plaintiff is not entitled to overtime compensation, and Plaintiff is seeking unpaid wages, not overtime compensation.

"A plaintiff who has worked overtime without pay may bring a private FLSA action for damages." *Florez v. Workforce Sol. Staffing, LLC et al.*, No. 20-22766-CIV, 2021 WL 7161783 (S.D. Fla. July 26, 2021) (citing 29 U.S.C. § 216(b)), *report and recommendation adopted sub nom.*, No. 20-22766-CIV, 2022 WL 539078 (S.D. Fla. Feb. 23, 2022). The statute of limitations for FLSA claims varies depending on whether the underlying FLSA violation was willful:

> The relevant time period of the FLSA case is either two or three years prior to the date of filing, depending upon whether a plaintiff can establish that the violation was willful: a cause of action arising out of a willful violation may be brought within three years after the action's accrual, whereas the ordinary statute of limitations in cases brought under the FLSA is two years.

*Murray v. Birmingham Bd. of Educ.*, 172 F. Supp. 3d 1225, 1239 (N.D. Ala. 2016) (citing 29 U.S.C. § 255(a)), *dismissed*, No. 16-16924-AA, 2017 WL 5485447 (11th Cir. Mar. 24, 2017).

Under the FLSA, an employer must pay its employees "an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *see also* 29 U.S.C. § 207(a). "However, the FLSA contains exemptions from this overtime requirement." *Byers v. Petro Servs., Inc.*, 110 F. Supp. 3d 1277, 1280 (S.D. Fla. 2015). "As relevant here, the FLSA's overtime-compensation requirements do not apply to executive or administrative employees." *Id.* (citing 29 U.S.C. § 213(a)(1)). "In order to prevail on their claim in this case, Plaintiffs must prove that they were suffered or permitted to work without compensation." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 201 *et seq.*). "Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [defendant] knew or should have known of the overtime work." *Id.* at 1314-15 (citing *Reich v. Dept. of Cons. and Nat. Res.,* 28 F.3d 1076, 1081-82 (11th Cir. 1994); 29 C.F.R. § 785.11).

### A. Plaintiff's Motion

As a threshold matter, Plaintiff's Motion fails to articulate a basis for concluding Plaintiff is entitled to summary judgment. Plaintiff seeks a judgment establishing that he is not exempt from the FLSA's overtime requirements under the FLSA's executive or administrative exemptions, and Defendant failed to keep time records for Plaintiff. However, none of those arguments provides a basis for concluding Plaintiff is entitled to summary judgment on his overtime claims. Concluding Plaintiff is not exempt under the FLSA simply establishes *Defendants* are not entitled to summary judgment due to Plaintiff's status as exempt from the FLSA's overtime provisions. It does not demonstrate Defendants violated the FLSA, or that Plaintiff is entitled to unpaid overtime compensation.

The same is true regarding Defendant's failure to maintain Plaintiff's time records. Such a finding establishes Plaintiff may rely on a relaxed evidentiary standard to prove he is owed overtime compensation under the FLSA. *See Jackson v. Corr. Corp. of Am.*, 606 Fed. App'x 945, 952 (11th Cir. 2015) ("[I]n situations where the employer has failed to keep records or the records cannot be trusted, the employee satisfies her burden of proving that she performed work without compensation if she 'produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'") (citing *Allen,* 495 F.3d at 1314-15) (alterations accepted)). But Defendants are not liable for failing to compensate Plaintiff for working overtime simply because they failed to keep time records tracking those hours.[6]

The undisputed evidence nonetheless establishes Defendants failed to keep time records for Plaintiff, and Plaintiff is not exempt under the administrative exception. First, it is undisputed that Defendants failed to keep time records for Plaintiff. PSMF ¶ 18; OPSMF ¶ 18. Plaintiff accordingly may satisfy his burden to show he worked uncompensated overtime by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Allen,* 495 F.3d at 1314-15. However, Plaintiff's Motion wholly fails to make this showing. Accordingly, while Plaintiff can prevail on his overtime claims at trial if he provides sufficient evidence detailing the amount and extent of his overtime work as a matter of just and reasonable inference, Plaintiff's Motion fails to satisfy his relaxed burden of proof.

Second, Defendants concede Plaintiff does not satisfy the administrative employee exemption, "given that his primary job duties were not office or non-manual work." ECF No. [60]

---

[6] Plaintiff is correct that the FLSA requires "[e]very employer subject to any provision of this chapter . . . [to] make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c). As discussed, however, the fact that Defendants failed to do so does not establish Defendants also failed to compensate Plaintiff for overtime work in violation of the FLSA.

at 2; *see* C.F.R. § 541.200 (the administrative exception requires (1) salary or fee-based compensation "of not less than $684 per week"; (2) an employee's primary duty to be "the performance of office or non-manual work directly related to management . . . ." and (3) for that primary duty to "include[] the exercise of discretion and independent judgment with respect to matters of significance."). The Parties thus agree Plaintiff does not satisfy the requirements of the administrative employee exemption. As discussed, however, this simply establishes *Defendants* are not entitled to judgment based on the administrative employee exemption. Moreover, Defendants respond that Plaintiff *is* exempt under the executive exemption, and they are accordingly entitled to judgment on Plaintiff's overtime claims. The Court therefore must determine whether the executive exemption applies to Plaintiff. If it does, Defendants have no obligation to compensate Plaintiff for working overtime. *See, e.g.*, *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1298 (S.D. Fla. 2006) ("Any employee 'employed in a bona fide executive, administrative, or professional capacity' need not receive overtime compensation in accordance with the requirements of 29 U.S.C. § 207(a).") (quoting 29 U.S.C. § 213(a)(1)).

In sum, while Plaintiff's Motion supports that he may prove he worked uncompensated overtime hours as a matter of just and reasonable inference and he is not exempt under the administrative exemption, it provides no basis for concluding Plaintiff is entitled to judgment on his overtime claims. The Court first addresses Defendants' Motion before considering whether Plaintiff is an exempt executive.

## B.  Defendants' Motion

Defendants contend they are entitled to summary judgment because the undisputed evidence shows (1) Plaintiff admits he does not have an overtime claim and that he is not seeking damages for uncompensated overtime; (2) Defendants had no actual or constructive knowledge

Plaintiff worked overtime; and (3) Plaintiff cannot show he worked uncompensated overtime. Defendants also argue Plaintiff is not entitled to liquidated damages or the FLSA's three-year statute of limitations because there is no evidence of bad faith nor willful FLSA violations. Plaintiff responds that (1) his deposition testimony did not waive his overtime claims; (2) Defendants knew he worked uncompensated overtime; (3) Plaintiff's testimony supports the just and reasonable inference that he worked unpaid overtime; and (4) whether Defendants acted in bad faith or willfully violated the FLSA is a jury question.

### i.   Plaintiff's Deposition Testimony

Defendants accurately observe that Plaintiff testified the only damages he is seeking to recover is his last paycheck, totaling $1,200.00, not damages for uncompensated overtime. Plaintiff also testified that he does not believe he is entitled to overtime pay, that he understood that he would receive a fixed salary regardless of the number of hours worked in a given week, and that Plaintiff never punched a time clock nor discussed overtime compensation with Defendants. Defendants contend this deposition testimony establishes Plaintiff is not entitled to overtime compensation, and that he is not seeking compensation for unpaid overtime in this case. For support, Defendants observe that "a party's deposition testimony may be treated as a judicial admission when the party's testimony, taken as a whole, is unequivocal." Corpus Juris Secundum, § 1579. Defendants also cite *Prod. Sols. Int'l, Inc. v. P.B. Prod., LLC*, 637 F. Supp. 3d 469, 475 (E.D. Mich. 2022) for the proposition that deposition testimony constitutes a binding evidentiary admission. Plaintiff responds that his deposition testimony did not waive his claim for overtime compensation. While Defendants are correct Plaintiff's deposition testimony constitutes a binding evidentiary admission, the Court disagrees that Plaintiff's testimony establishes Defendants are entitled to judgment as a matter of law.

Defendants' reliance on Plaintiff's testimony fails to show they are entitled to judgment on Plaintiff's overtime claims. Regarding damages, the fact that Plaintiff testified he is seeking unpaid wages fails to show Plaintiff is not entitled to damages for unpaid overtime. Defendants' observation that deposition testimony is properly relied on as evidence does not support the conclusion that judgment is appropriate in this context. Defendants have effectively shown the undisputed evidence establishes Plaintiff believes he is not entitled to overtime compensation. But Defendants have not established that Plaintiff is not entitled to overtime compensation as a matter of law, or that Plaintiff is not entitled to damages for any uncompensated overtime. Furthermore, Plaintiff's deposition testimony is far from unequivocal. To the contrary, Plaintiff's testimony indicates he had a confused understanding of his rights under the FLSA:

Q. What do you understand is the nature of your lawsuit?

A. Well, first of all, because Mr. Renato [Viola] agreed to pay me a salary, and lastly, he deposited me half of the salary that we agreed upon.

Q. Okay. Is there – is that what you are claiming in this case? Is there anything else?

A. Only my rights.

Q. Okay. So I want to clarify what you just said. Are you saying that he agreed to pay you a salary and he didn't pay the full amount he agreed?

      MR. DAMMOUS: Object to form.

      THE WITNESS: I am sorry. I didn't understand the question much.

BY MR. ELDER:

Q. Okay. I am asking you, what are you claiming that the people you sued in this lawsuit did you wrong?

A. Well, he didn't – he – he didn't give me any explanation why he was paying me half of the salary we agreed upon. And that is until I realized that he was depositing me just half of the salary, and that was the reason why I assumed that they were firing me on Thursday, July 21st, and I filed a lawsuit on 22nd of the same month.

*Id.* at 7-8.

Plaintiff also equivocated when discussing his entitlement to overtime compensation. Plaintiff's testimony indicates he believes the fact he was a salaried employee precludes him from receiving additional overtime compensation, but his testimony is unclear:

> Q. Did you ever complain to Renato [Viola], Umberto [Mascagni], or anyone else at any of the companies that you felt that you were entitled to overtime pay when you were on a salary?
>
> > MR. DAMMOUS: Object to form.
> >
> > THE WITNESS: We agreed [to] a salary. So we didn't need to discuss that.
>
> BY MR. ELDER:
>
> Q. Okay. So you didn't believe you were entitled to overtime pay when you were a salaried employee, correct?
>
> > MR. DAMMOUS: Object to form.
> >
> > THE WITNESS: Respecting the laws – respecting the laws in this country, after 40 hours, the overtime needs to be paid. But unless you have a salary. But that salary, this gentleman right here didn't respect.
>
> BY MR. ELDER:
>
> Q. Okay. So – but because you were salaried, if they paid you your salary, you believed you were not entitled to overtime?
>
> > MR. DAMMOUS: Object to form.
> >
> > THE WITNESS: Of course, yes. Of course, yes.
>
> Q. Do you believe you were entitled to overtime if you were paid your salary?
>
> > MR. DAMMOUS: Object to form.
>
> BY MR. ELDER:
>
> Q. You can answer.

A. Well, when you agree – when we agreed – when we agreed on a salary, that was a salary, and that is the agreement. But then there was no explanation why he was not paying to me the whole complete salary. He never explained that to me.

Q. Okay. But my question is: When you entered into an agreement to be paid a salary, was it your understanding and agreement that, if that they [Defendants] paid that salary, you would not be paid overtime?

> MR. DAMMOUS: Object to form.

> THE WITNESS: By law you need – you need to respect what we talk about or we spoke about. When I was making a lot of hours, I told him that I will work hourly, and he didn't want it.

ECF No. [50-1] at 66-68.

Moreover, Plaintiff accurately observes that unlike here, the plaintiff in *Prod. Sols. Int'l, Inc.* affirmatively waived his claim. 637 F. Supp. 3d at 1354. Construing Plaintiff's testimony as waiving his overtime claims is particularly inappropriate here, as "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352 (11th Cir. 1982) (quoting *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981)). Defendants reply that they are not arguing Plaintiff waived his overtime claims. Instead, they contend Plaintiff's testimony constitutes an evidentiary admission that is fatal to his overtime claims. However, Defendants position lacks support. The authorities relied upon support the general proposition that deposition testimony is properly relied on to grant summary judgment where that testimony demonstrates the opposing party is entitled to judgment as a matter of law. *See Bushman Const. Co. v. Air Force Acad. Hous., Inc.*, 327 F.2d 481, 484 (10th Cir. 1964); *Baumler v. Ford Motor Co.*, 89 F. Supp. 218, 221 (D. Minn. 1949). Here, while reliance on Plaintiff's testimony is proper, the testimony fails to establish that

Defendants are entitled to judgment on his overtime claims. Defendants' reliance on Plaintiff's deposition testimony is accordingly misplaced.

## ii. Fluctuating Workweek Method

Summary judgment is also inappropriate, considering the record evidence establishes Defendants failed to maintain time records for Plaintiff, and that Plaintiff was not compensated for any overtime hours he may have worked. As noted, it is undisputed that Defendants failed to keep Plaintiff's time records since he became a salaried employee. PSMF ¶ 18; OPSMF ¶ 18. Moreover, Plaintiff was a salaried employee by April 2019. *See* ECF No. [52-1] at 86. Plaintiff filed this action on July 29, 2022, and his claims are subject to the FLSA's statute of limitations of either two or three years.[7] Plaintiff accordingly was a salaried employee—and Defendants failed to keep time records of any overtime Plaintiff may have worked—during the relevant period of July 2019 – July 2022. The evidence thus establishes that Plaintiff was not compensated for working overtime even if he worked overtime during this period.

Assuming Plaintiff is not exempt from the FLSA's overtime provisions, Defendants' failure to compensate Plaintiff for any overtime he may have worked constitutes a violation of the FLSA. As noted, the FLSA requires an employer to pay its employees one and one-half times the employee's "regular rate for all hours he works in excess of forty hours per week." *Josendis*, 662 F.3d at 1298. "The 'regular rate' is the hourly rate at which the employer pays the employee for normal, non-overtime hours in a 40–hour workweek." *Garcia v. Yachting Promotions, Inc.*, 662 F. App'x 795 (11th Cir. 2016) (citing *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945)). The FLSA does not exempt employees from its overtime provisions simply because those employees are salaried rather than paid hourly.

---

[7] As discussed above, FLSA claims are typically subject to a two-year statute of limitations, but willful FLSA violations are subject to a three-year statute of limitations. 29 U.S.C. § 255(a).

However, the FLSA's "implementing regulations provide for an alternative way to calculate the compensation of certain salaried employees: the fluctuating workweek method." *Id.* (citing 29 C.F.R. § 778.114).

"The fluctuating workweek method of payment allows an employee whose hours fluctuate from week to week to be compensated at a fixed amount per week as straight-time pay irrespective of the number of hours worked, whether few or many." *Id.* (citation omitted). "Payment for overtime hours under this method is at one-half time regular-rate instead of the standard one and one-half time rate because, in theory, the straight-time rate already includes compensation for all hours worked." *Id.* "The fluctuating workweek method is merely 'one method of complying with the overtime payment requirements of 29 U.S.C. § 207(a)(1). It is not an exemption to it.'" *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013) (quoting *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir.2001)). "Consequently, the fluctuating workweek method is not an affirmative defense; rather, 'the employee bears the burden of proving that the employer failed to properly administer [it].'" *Id.*

The Department of Labor's regulations that permit the use of the fluctuating workweek method require a given employee to satisfy four criteria:

(1) the employee clearly understands that the straight-salary covers whatever hours he or she is required to work;

(2) the straight-salary is paid irrespective of whether the workweek is one in which a full schedule of hours are worked;

(3) the straight-salary is sufficient to provide a pay-rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours worked is greatest; and

(4) in addition to straight-salary, the employee is paid for all hours in excess of the statutory maximum at a rate not less than one-half the regular rate of pay.

29 C.F.R. § 778.114; *Garcia*, 662 Fed. App'x at 797.

The FLSA requires all non-exempt employees to be compensated for overtime work regardless of whether they are salaried employees. If an employee is salaried *and* meets all four of § 778.114's requirements, an employer may utilize the fluctuating workweek method to compensate that employee for overtime work.

Here, the record establishes Defendants never paid Plaintiff additional compensation for overtime work, either at one and one-half times Plaintiff's regular rate, or at one-half of Plaintiff's regular rate of pay pursuant to the fluctuating workweek method. The fluctuating workweek method consequently does not apply to this case, as it was never employed by Defendants to compensate Plaintiff for overtime work. The Court accordingly must determine whether Plaintiff is exempt under the executive employee exemption. If Plaintiff is exempt, Defendants are entitled to judgment as a matter of law. If he is not, Plaintiff is entitled to overtime compensation if he can show he worked overtime without compensation, and Defendants knew or should have known that he did so.

### C.  Executive Exemption

"Exemptions under the FLSA are to be construed narrowly against the employer who asserts them." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 594 (11th Cir. 1995); *see also Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 965 (11th Cir. 1997) (same). The employer bears the burden of proving that an employee is exempt from overtime payments. *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta,* 920 F.2d 800, 804 (11th Cir. 1991); *Bagwell v. Florida Broadband, LLC,* 385 F.Supp.2d 1316, 1322 (S.D. Fla. 2005) ("The employer carries the burden of proving the exemption, and the overtime provisions of the FLSA are narrowly construed against the employer.") (citing *Hogan v. Allstate Ins. Co.,* 361 F.3d 621, 625 (11th Cir. 2004)). "In

addition, the Defendant employer[ ] must prove the applicability of an exemption by clear and affirmative evidence." *Altman v. Sterling Caterers, Inc.,* 879 F.Supp.2d 1375, 1379 (S.D. Fla. 2012) (citing *Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001)).

"Congress expressly authorized the Secretary of Labor to define the scope of the executive, administrative, and professional employee exemptions [in section 213(a)(1)]." *Avery v. City of Talladega,* 24 F.3d 1337, 1340 (11th Cir. 1994) (alteration accepted) (citation omitted). "To determine whether a genuine issue exists about whether Plaintiff qualified as an 'administrative' or 'executive' employee within the meaning of section 213(a)(1), the Court looks to applicable case law and to the Code of Federal Regulations." *Alvarez v. Key Transp. Serv. Corp.,* 541 F. Supp.2d 1308, 1312 (S.D. Fla. 2008). "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Avery,* 24 F.3d at 1340 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

As discussed, the Parties dispute whether Plaintiff satisfies the executive exemption. "According to Department of Labor Regulations, the employer must satisfy both a 'salary basis' test and a 'primary duties' test to demonstrate that an employee qualifies for this exemption." *Altman,* 879 F. Supp. 2d at 1381 (citing *Hogan*, 361 F.3d at 625-26 (11th Cir. 2004) (adopting the Department of Labor's salary/duties as the tests for whether the executive exemption applies); 29 C.F.R. § 541.200)). The relevant Department of Labor regulations provide a four-part test which defines the term "employee employed in a bona fide executive capacity" to mean any employee:

(1)  Compensated on a salary basis at a rate of not less than $684 per week ...;

(2)  Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other
employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and
recommendations as to the hiring, firing, advancement, promotion or any other
change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

Here, Plaintiff concedes his weekly salary of $1,200.00 satisfies the first prong of the

executive exemption.[8] The Court accordingly must analyze the second, third, and fourth prongs to

determine whether Plaintiff is exempt from the FLSA's overtime provisions.

### i.    Whether Plaintiff's Primary Duty Was Management

#### 1.    Applicable Law

"The central question regarding application of the executive exemption is whether

Plaintiff's 'primary duty' was 'management.'" *Brillas v. Bennett Auto Supply, Inc.,* 675 F.Supp.2d

1164, 1168 (S.D. Fla. 2009). "Of course, merely having the title 'manager' is not talismanic, and

the Court must still engage in a fact-specific inquiry to determine whether Plaintiff's most critical

duties to the enterprise were his exempt managerial duties." *Rutenberg v. Boynton Carolina Ale

House, LLC,* 2010 WL 135100, at *3 (S.D. Fla. Jan. 8, 2010) (citing *Rodriguez v. Farm Stores

Grocery, Inc.,* 518 F.3d 1259, 1264 (11th Cir. 2008) ("When it comes to deciding whether an

employee is an executive within the meaning of the FLSA, the answer is in the details.")). In

applying the exemption, "[h]ow an employee spends her time working is a question of fact, while

the question of whether the employee's particular activities exclude her from the overtime benefits

---

[8] As noted above, Plaintiff's payroll records indicate he was sometimes paid less than $1,200.00
per week. Some of those pay stubs reflect payments below the minimum rate of $684.00 per week. *See,
e.g.*, ECF No. [52-1] at 61 (reflecting a pay rate of $500 per week for the pay period of March 16, 2020 –
March 29, 2020). The Court nonetheless assumes Plaintiff satisfies the first prong of the executive
exemption in light of the Parties' agreement and ultimately concludes Plaintiff's exemption status
constitutes a genuine dispute of material fact.

of the FLSA is a question of law." *Langley v. Gymboree Operations, Inc.,* 530 F. Supp. 2d 1297,

1301 (S.D. Fla. 2008) (citing *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct.

1527, 89 L.Ed.2d 739 (1986)).

The Department of Labor's regulations provide non-exhaustive guideposts to determine

which type of work constitutes management:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. The Department of Labor also provides a series of factors to consider whether

the employee's "primary duty" was management:

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

> The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register

29 C.F.R. § 541.700(a)-(c). The regulations further provide:

Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives shall make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

29 C.F.R. § 541.106(a).

"An employee's 'primary duty' is determined based on all of the facts in a particular case, with emphasis placed upon the character of the employee's job as a whole." *Langley,* 530 F.Supp.2d at 1300. "[N]umerous courts have held that when considering the question concerning whether management was an employee's 'primary duty,' a more useful question is whether or not the employee's managerial duties constituted the primary value the employer placed on the employee." *Brillas,* 675 F.Supp.2d at 1168; *see also Dalheim v. KDFW–TV,* 918 F.2d 1220, 1227 (5th Cir. 1990) ("the employee's primary duty is what she does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time"); *Bosch v. Title Max, Inc.,* 2005 WL 357411, at *6 (N.D. Ala. Feb. 7, 2005) ("A more useful question is whether or not [employee's] managerial duties constituted the primary value her

employer placed upon her."). "Fundamentally, the amount or percentage of time spent by an employee on work claimed to be exempt is not dispositive." *Calvo v. B & R Supermarket, Inc.*, 63 F. Supp. 3d 1369, 1381 (S.D. Fla. 2014) (collecting cases).

## 2. Record Evidence

The Parties primarily rely on Viola, Serra, and Plaintiff's deposition testimony to support their positions regarding the nature of Plaintiff's role.[9] Plaintiff contends his primary duty was to "mix and make the pizza dough[,]" not management. ECF No. [51] at 4. Defendants respond that Plaintiff mischaracterizes his role as simply making pizza dough. Defendants contend Plaintiff was responsible for supervising the "dough production" department. According to Defendants, Plaintiff's primary role was to supervise and train the staff making the pizza dough to ensure quality and consistency. Defendants also contend Plaintiff's managerial duties included managing the department's inventory and production records, ensuring the staff properly cleaned the dough making machines and related equipment, and operating the software used for dough production. Plaintiff replies that he did not maintain production records or keep inventory, and that he did "not supervise staff, he worked alongside contractors who did not listen to him." ECF No. [63] at 2 (record citation omitted).

Viola testified that "Plaintiff was in charge of the most important department of the companies, namely, dough production. Porfirio's job was the most important job, still today in this company, keep consistent the dough." ECF No. [54-2] at 71. Viola also testified that he would step

_____

[9] The Parties also seek to rely on their *own* interrogatory responses as additional record evidence. The Court does not consider the Parties' interrogatory responses in its analysis, as those responses are not properly considered as affirmative evidence. *See EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1221 (N.D. Ga. 2014), *aff'd*, 703 Fed. App'x 803 (11th Cir. 2017) ("A party who has answered interrogatories submitted by an adversary generally cannot secure admission of its answers into evidence and may not rely on its answers as evidence in its favor or as affirmative evidence.") (quoting 23 AM. JUR. 2d, DEPOSITIONS AND DISCOVERY § 131 (collecting cases) (internal quotation omitted)).

in to supervise the employees producing the dough if Plaintiff was unavailable. *See id.* at 57 ("I was there supervising, because the dough makers had to be supervised all the time for the dough to have consistency."). Although he acknowledged dough production is physical work, Viola testified Plaintiff's role was primarily supervisory in nature. *See id.* at 45 (explaining actually producing the dough "is the job of [Plaintiff's] staff. They going to do the – the manual job. He need[s] [to] just supervi[se] and [to] not be distract[ed].").

Plaintiff described the relationship between himself and the other workers who prepared pizza dough as follows:

> I had – yes, I was in charge of the whole production, but Mr. Renato [Viola] here, he decided to hire a company, and that company was bringing people to work, and I was – that they didn't know how to do certain things, and I was telling them in a good manner, things that they were not supposed to do, for example, don't toss the dough in that way, because that was something that Mr. Renato [Viola] didn't want [sic] to happen. But they were not doing it.

ECF No. [50-1] at 27. However, Plaintiff later testified he did not consider himself their supervisor:

> Q. And did you consider yourself as their supervisor?
>
> MR. DAMMOUS: Object to form.
>
> THE WITNESS: Well, I was not considering myself a supervisor. It was just a relationship between co-workers. That's what I considered that to be. I was not considering myself a supervisor.

*Id.* at 28. Plaintiff also testified he was "not supposed to have the obligation of fixing the mistake[s] of people that were not capable of doing their job." ECF No. [50-1] at 26.

Plaintiff's relationship with Serra is similarly unclear. Plaintiff described their working relationship as follows:

> Q. Okay. And so did you consider yourself to be a co-worker or did you consider Maximo [Serra] to be your boss or supervisor?

> MR. DAMMOUS: Object to form.
>
> THE WITNESS: Well, as I said before, we respect each other's social life.

Q. Okay. Social life usually means things outside of work.
                    Is that your understanding?

A. Yes, that is correct.

Q. So I am directing it at in the workplace, when you were working.

A. Well, at work, each one of us had our own responsibility. For him was to order supplies and for me was production.

Q. And did you think he could tell you what to do and instruct you to do things?

> MR. DAMMOUS: Object to form.
>
> THE WITNESS: In a co-worker relationship, yes.

BY MR. ELDER:

Q. Could you instruct him and tell him to do things?

A. In the life of production, I had more knowledge than him.

Q. So did you sometimes instruct him on things?

A. A hundred percent ….

*Id.* at 116.

Plaintiff later testified that he considered Herrera and Viola to be his supervisors at

Wynwood and Serra to be his supervisor at Warehouse:

Q. Okay. And based on your definition of a supervisor, who was your supervisor when you worked with these gentlemen here?

A. In the last location where I worked, it was Max Sera, but he is not knowledgeable about how to treat the employee[s]. He was not capable of working as a supervisor.

Q. And prior to that location, who was your supervisor?

A. The gentleman that is present right here [Viola], that is the owner and Grace [Herrera] that was always attentive for any needs every day.

*Id.* at 34-35. When asked what types of issues Plaintiff typically discussed with Herrera, Plaintiff testified "[w]ell, because we were getting into making decisions [about] how much we were going to be making because I couldn't make decision[s] on my own." *Id.* at 33.

Furthermore, Plaintiff testified that he did not assist in ordering flour or other ingredients for the dough. *Id.* at 29. Plaintiff testified that Serra was responsible for managing Warehouse's inventory, not Plaintiff. *Id.* at 29-30. Regarding Wynwood, Plaintiff testified Herrera or Viola was responsible for inventory. *Id.* at 33. Viola conversely testified that Plaintiff was responsible for ensuring "the inventory was always perfect." ECF No. [54-2] at 34. However, Viola subsequently testified Defendants did not initially keep inventory records at either location:

> Q. Was there records kept to determine how much dough was available each day, either at Wynwood or Warehouse 305?
>
> A. Not in the beginning.
>
> Q. No records were kept? When – when did you start keeping records of how much dough you had available?
>
> A. Oh, when we moved in the – in the warehouse. Not in the beginning, the – doing our operation in the warehouse.

ECF No. [54-2] at 60-61. Viola then explained Plaintiff's role in managing inventory:

> Q. All right. So we're talking about the records. So when you were at Wynwood, you didn't keep inventory of how many – how much dough was available?
>
> A. My inventory record was for [Plaintiff].
>
> Q. He kept it in his head?
>
> A. He was excellent in this.
>
> Q. And what did he keep in his head in terms of inventory, if you know?
>
> A. He was organized, maybe he has his notebook, but honestly, we don't have the software that we have now. We have specific software today that specify in the inventory, sir. But at this time was [Plaintiff] take care of all the inventory, flour,

> his olive oil, and bag, whatever he – he – was under his department. And honestly,
> what I saw, [Plaintiff] also was very food with his memory, with his knowledge
> with, this experience.

*Id.* at 61-62. Viola concluded by noting Defendants subsequently "invest[ed] in a software[,] which

"is keeping the inventory." *Id.* at 62. However, Viola was subsequently unable to describe how

Warehouse tracked pizza dough inventory:

> Q. Yeah. Did you keep track of how much dough was going out to each restaurant?
>
> A. No, sir.
>
> Q. Well, how would you know how much to send to each restaurant? Was it because
> the restaurants asked for the dough?
>
> A. Yes. And I was believed in my trust person, [Plaintiff].
>
> Q. So when the restaurants asked for dough each week at Warehouse 305, did –
> was that recorded, how much dough – how much dough had gone out to each
> restaurant?
>
> A. I don't know, honest.

*Id.* at 65-66. Viola's subsequent testimony regarding Plaintiff's role in maintaining inventory and

production records—and how that role intersected with other employees and the software used to

track inventory—is similarly confused. *See id.* at 66-74.

For his part, when asked who was responsible for inventory at the Warehouse location,

Serra answered "[t]he production center for [Plaintiff], and supplies and trucks, myself." ECF No.

[54-1] at 26. Serra explained that "[e]very week [Plaintiff] would give us an order of the amount

of flour and oil that he needed for production[,]" either orally or by writing a note "of the things

that he needed." *Id.* at 27. Serra subsequently testified that "[w]e did not keep inventory. We would

make weekly orders." *Id.* at 29. When asked to clarify whether Defendants kept inventory at the

Warehouse location during the period when Plaintiff worked there, Serra testified "I don't know."

*Id.* at 31.

The Court finds that whether Plaintiff's primary duty was management constitutes a genuine dispute of material fact. The deposition testimony discussed above fails to unambiguously establish Plaintiff's "managerial duties constituted the primary value the employer placed on the employee." *Brillas*, 675 F. Supp. 2d at 1168. Whether Plaintiff's role in overseeing the dough production department is properly characterized as managerial in nature is itself unclear. Plaintiff, Viola, and Serra each testified that Plaintiff was responsible for dough production, most notably by ensuring consistency and quality. But Plaintiff's testimony also explains that he considered the other individuals who produced the pizza dough to be co-workers, not subordinates, and that he was "not supposed to have the obligation of fixing the mistake of people that were not capable of doing their job." ECF No. [50-1] at 26.

Moreover, Plaintiff's testimony characterizes Serra and Herrera as his supervisors, although he also indicated he considered Serra to be an equal within the workplace hierarchy. Although "merely having the title 'manager' is not talismanic," *Rutenberg*, 2010 WL 135100, at *3—and neither is lacking such a title—Plaintiff's Offer Letter describes his position at Warehouse as a "Quality Control Specialist reporting to the Warehouse Manager, Maximo Serra[,]" rather than as a managerial position. ECF No. [7-1]. The Offer Letter lends support to the notion that Serra was Plaintiff's supervisor, and that the two were not equals. Plaintiff also testified that he discussed issues with Grace because he could not "make decision[s] on [his] own." ECF No. [50-1] at 33. Conversely, Viola's deposition testimony characterizes Plaintiff as an independent manager responsible for the entire dough production department. *See, e.g.*, ECF No. [54-2] at 32.

Viola and Serra's testimony suggests the primary value placed on Plaintiff's work was managerial in nature, namely, supervising dough production and training employees to ensure proper techniques were used. However, Plaintiff essentially characterizes his primary duty as a

leadership role within the dough production department alongside his other co-workers, and subject to the supervision of Serra, Herrera, and Viola. That characterization suggests Plaintiff's primary duty does not fit the executive exemption. If Plaintiff is little more than a permanent employee in the dough production department relied on for his experience, he does not qualify as an executive.[10] *See* C.F.R. § 541.106(a) ("An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.").

The deposition testimony is similarly inconsistent with respect to Plaintiff's role in managing inventory. As discussed, Plaintiff testified that Serra was responsible for inventory at Warehouse, and that Herrera or Viola was responsible for inventory at Wynwood. ECF No. [50-1] at 29-30, 33. Serra and Viola testified that Plaintiff was responsible for maintaining the dough production department's inventory, but their testimony is unclear. Viola testified no dough inventory records were kept by Defendants "in the beginning[,]" and that Defendants relied on Plaintiff to keep inventory. Viola did not clearly explain the manner in which Plaintiff did so, and subsequently noted Defendants "invest[ed] in a software[,] which "is keeping the inventory." ECF No. [54-2] at 62. Viola also answered "I don't know, honest[]" when asked to explain how Warehouse tracked the dough it used each week. *Id.* at 65-66. Serra similarly testified that Plaintiff would track the inventory needed for dough production, but then testified that "[w]e did not keep inventory" at the Warehouse location.[11] [54-1] at 29.

---

[10] Plaintiff also cannot satisfy the executive exemption if he primarily relied on the direction of Herrera, Serra, or Viola to guide his work. *See* 29 C.F.R. § 541.106(a) ("[T]he nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods."). The extent to which Plaintiff relied on these individuals is unclear, but his testimony that he relied on Herrera because he could not "make decision[s] on [his] own," ECF No. [50-1] at 33, suggests Plaintiff may have been directed by supervisors to perform exempt work.

[11] Serra later clarified that he "didn't know" if Defendants kept inventory at the Warehouse location. ECF No. [54-1] at 31.

The deposition testimony thus indicates Plaintiff played some role in maintaining the dough production department's inventory. But the extent to which he did so is unclear, as is the manner in which Defendants kept inventory in the first place. Furthermore, Viola's testimony explains Defendants' inventory is now managed by software, not Plaintiff. Even assuming Plaintiff did manage inventory while employed by Defendants, the periods when he did so are unclear, as is when Defendants implemented the use of their inventory-tracking software.

It is clear Plaintiff does more than simply make pizza dough, yet whether Plaintiff's additional duties are properly characterized as managerial in nature is a question of fact. As such, Defendants have failed to show Plaintiff "fits clearly and unmistakenly within the spirit of the exemption." *Barreto v. Davie Marketplace, LLC*, 331 Fed. App'x 672, 674 (11th Cir. 2009) (internal quotation omitted); *see also Calvo*, 63 F. Supp. 3d at 1378 (an employer must prove the exemption "by clear and affirmative evidence."). Whether Plaintiff's primary duty is management is a genuine dispute of material fact, as is whether Plaintiff satisfies the requirements of the executive exemption.

The Court does not consider whether Plaintiff satisfies the third and fourth prongs of the executive exemption in light of its conclusion that the "central question" of "whether Plaintiff's 'primary duty' was 'management[]'" constitutes a genuine dispute of material fact. *Brillas*, 675 F. Supp. 2d at 1168.

**D.  Overtime Compensation**

The Court's finding that whether Plaintiff is exempt from the FLSA's overtime provisions constitutes a genuine dispute of material fact does not end its analysis. Defendants contend they are entitled to judgment on Plaintiff's overtime claims because Plaintiff cannot show (1) he worked uncompensated overtime; and (2) that Defendants knew or should have known of Plaintiff's

overtime work. Plaintiff responds that he produced sufficient evidence to establish the amount and extent of his overtime work as a matter of just and reasonable inference. Regarding Defendants' knowledge of his overtime work, Plaintiff contends the evidence shows Defendants knew or should have known Plaintiff worked overtime.

### i. Whether Plaintiff Worked Overtime Without Compensation

It is undisputed that Defendants failed to keep time records for Plaintiff. PSMF ¶ 18; OPSMF ¶ 18. As the Eleventh Circuit explained in *Jackson v. Corr. Corp. of Am.*, 606 Fed. App'x 945 (11th Cir. 2015), an employee enjoys a relaxed evidentiary burden to prove that he or she worked unpaid overtime when their employer fails to keep time records:

> It is well established that an employee bringing a claim for unpaid overtime wages must initially demonstrate that she performed work for which she was not properly compensated. *See, e.g., Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1314–15 (11th Cir. 2007). However, "it is the employer's duty to keep records of the employer's wages, hours, and other conditions and practices of employment." *Id.* at 1315. For that reason, in situations where the employer has failed to keep records or the records cannot be trusted, the employee satisfies her burden of proving that she performed work without compensation if she "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 1316 (quotation marks omitted); *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013) (noting that if the employer failed to keep time records, the burden on the employee to show that she worked overtime without compensation is "relaxed").

*Id.* at 952. "If the employee satisfies her burden, the burden then shifts to the employer to present evidence that negates the reasonableness of the inference to be drawn from the employee's evidence." *Id.* n.9 (citing *Lamonica*, 711 F.3d at 1315).

Plaintiff relies on his deposition testimony to establish the amount and extent of his overtime work. Plaintiff provided the following testimony regarding his overtime work at Wynwood:

> Q. Okay. And I asked you earlier whether you worked more than 40 hours when
> you worked only here. So I am going to now ask you, with regard to Wynwood,
> when you worked at Wynwood, did you ever work more than 40 hours per week?
>
> A. I was getting there – I was getting there at 5:30 a.m. and leaving 6:00 p.m., and
> I was working seven days. So you can add and do the math right there.
>
> Q. That's at Wynwood?
>
> A. Yes, that's right.

ECF No. [50-1] at 61-62. Plaintiff also testified that he routinely worked in excess of 40 hours at

Warehouse:

> Q. Okay. And – and then you were –before you testified about the production
> schedule, my question was: When you worked at the Warehouse, did you ever work
> more than 40 hours a week?
>
> A. Always, always. I – I never can specify that I just worked for 40 hours. As I am
> going to repeat, there was not a set schedule to leave work.
>
> Q. Okay. And I understand that there was no set schedule. But did you ever work
> more than 40 hours a week at Warehouse?
>
> A. Yes, I worked more than 40 hours.
>
> Q. How many times?
>
> A. I wasn't – I could not tell you how many times because I was doing that
> constantly, always.

*Id.* at 63. Defendants contend Plaintiff's testimony is insufficient to show he worked overtime even

as a matter of just and reasonable inference.

Defendants also point out that Plaintiff's Rule 26 disclosures contain estimates of

Plaintiff's overtime hours, but those estimates are unsupported and inconsistent. The Court agrees.

Plaintiff's amended Rule 26 disclosures provide that "[a]fter conducting discovery, Plaintiff is

claiming that he worked an estimated 63 hours per week. Plaintiff worked for 153 weeks." ECF

No. [57-1] at 4. But those estimates lack evidentiary support and are inconsistent with Plaintiff's

deposition testimony. As detailed above, Plaintiff testified that he worked twelve and a half hours a day, seven days a week. ECF No. [50-1] at 61. That estimate produces an average of 87.5 hours a week, well *above* Plaintiff's revised estimate of 63 hours per week.

Plaintiff replies that "[a]fter taking deposition of defense witness, the overtime rate should be calculated at the rate of time and a half the regular rate[.]" ECF No. [57] at 5-6. Plaintiff appears to be referencing his understanding that the fluctuating workweek method's one-half overtime rate is inapplicable. However, Plaintiff fails to articulate the basis for the discrepancy between his estimates and his deposition testimony. To the contrary, Plaintiff simply asserts "[t]he reduction in hours was made to enhance the probability of success at trial." *Id.* at 6. In doing so, Plaintiff effectively concedes the overtime estimates contained in his amended disclosures lack evidentiary support. The Court thus agrees with Defendants that those estimates fail to reasonably approximate Plaintiff's overtime hours. Accordingly, the Court must determine whether Plaintiff's deposition testimony is sufficient to create a triable issue of whether Plaintiff worked uncompensated overtime.

Defendants argue Plaintiff's general estimates of his overtime hours fail to show he worked unpaid overtime as a matter of just and reasonable inference. For support, Defendants rely on *Holaway v. Stratasys, Inc.*, 771 F.3d 1057 (8th Cir. 2014) and *Santiago v. Saunders*, 14-61505-CIV-MORENO, 2015 WL 4454782, at *2 (S.D. Fla. July 20, 2015), *aff'd sub nom. Santiago v. Sanders*, 15-13452, 2017 WL 11684722 (11th Cir. Aug. 8, 2017). In *Holaway*, the Eighth Circuit found the plaintiff's general estimates of his weekly overtime hours failed to show he worked overtime as a matter of just and reasonable inference. The Eighth Circuit explained:

> However, Holaway has failed to meet even the relaxed evidentiary standard because he failed to put forward any evidence of the amount and extent of his work in excess of forty hours a week for any week worked for Stratasys, let alone evidence of excess hours worked every week of his employment. Holaway has,

> instead, put forth contradictory and bare assertions of his overtime hours worked.
> At various times, Holaway has estimated his work hours as between forty-five and
> seventy hours a week, yet has failed to specifically account for the hours worked.
> In fact, Holaway failed to put forth any evidence regarding specific weeks where
> he worked beyond forty hours. Holaway has also failed to provide a meaningful
> explanation of how he arrived at his final estimate of sixty hours a week, every
> week, of his employment. Holaway provided only vague testimony and failed to
> reference specific days and hours worked.

771 F.3d at 1059. The court accordingly concluded that the plaintiff "failed to come forward with

sufficient evidence to show the amount and extent of [overtime] work which would allow a fact-

finder to find overtime hours as a matter of just and reasonable inference." (internal quotation

omitted).

In *Santiago*, the plaintiff's overtime claims proceeded to a jury trial. The jury was unable

to determine whether the plaintiff worked overtime, or the number of overtime hours he worked,

leading to the court "eventually grant[ing] a mistrial" and granting the defendants' renewed motion

for judgment as a matter of law. *Id.*, at *1. The court in *Santiago* relied on *Holaway* in part to find

that the plaintiff's uncorroborated testimony was insufficient to establish he worked

uncompensated overtime hours as a matter of just and reasonable inference. 2015 WL 4454782, at

*2. The court observed the plaintiff's "entire case relies on his uncorroborated testimony that he

'sometimes' worked through lunch 'maybe once or twice per month,' and his attorney's blanket

assertion that [the plaintiff] worked 52.5 or 60.5 hours per week." *Id.*, at *2. The court held "the

plaintiff cannot create *Anderson's* reasonable inference of underpayment if he cannot recall the

vaguest details of the time he worked and the hours for which he was underpaid." *Id.*, at *3 (citing

*Ihegword v. Harris County Hospital District,* 555 Fed. App'x 372, 375 (5th Cir. 2014)). The court

also noted that "[e]ven assuming that [the plaintiff] did create an inference of underpayment, the

Defendant negated the reasonableness of [plaintiff's] testimony with a detailed payroll register, on

which even the Plaintiff relied after admitting that he had no recollection of the time he worked." *Id.*, at *3.

Defendants argue that, as in *Holaway* and *Santiago*, Plaintiff's uncorroborated deposition testimony fails to support the inference that Plaintiff worked overtime. Plaintiff responds that, unlike *Holaway*, he provides a meaningful explanation of how he arrived at his estimated hours. For support, he points to his amended Rule 26 disclosures, his responses to Defendants' interrogatories, and his deposition testimony. As discussed, Plaintiff's amended disclosures fail to provide a reasonable estimate of Plaintiff's overtime hours. Furthermore, Plaintiff's reliance on his own interrogatory responses as affirmative evidence of his overtime hours is improper. *EarthCam, Inc.*, 49 F. Supp. 3d at 1221 (citation omitted). Nevertheless, the Court agrees with Plaintiff that his deposition testimony is sufficient to defeat summary judgment.

The Court is unpersuaded that *Holaway* controls the result here. As in *Holaway*, Plaintiff offered "bare assertions of his overtime hours worked[,]" provided somewhat "vague testimony" and failed to provide "evidence of excess hours worked every week of his employment." 771 F.3d at 1059. Unlike *Holaway*, however, Plaintiff provided specific testimony regarding his average weekly work schedule. Plaintiff testified that he worked from 5:30 a.m. to 6:00 p.m., seven days a week at Defendants' Wynwood location. ECF No. [50-1] at 61-62. Regarding the Warehouse location, Plaintiff testified that he "worked above 40 hours" and did so "constantly, always." *Id.* at 63. Taken together, Plaintiff's testimony indicates that he regularly worked overtime at both locations, and that he worked an average of 47.5 overtime hours per week while working at the Wynwood location. To be sure, this evidence fails to account for specific weeks when Plaintiff worked overtime. But Plaintiff's deposition testimony is both consistent and provides a relatively clear estimate of Plaintiff's weekly work schedule. The Court is unconvinced more is required in

this Circuit to avoid summary judgment. As the court in *Chen v. Wow Rest. TH, LLC*, No. 8:22-CV-2774-VMC-NHA, 2024 WL 184251 (M.D. Fla. Jan. 17, 2024), recently explained:

> The Court is also mindful that "[i]n this circuit, in an FLSA action, an employee need not support their testimony with time records or other documentation." *Long v. Alorica, Inc.*, No. CIV.A. 11-00476-KD-C, 2012 WL 4820493, at *6 (S.D. Ala. Oct. 10, 2012). While Plaintiffs lack documentation to support the number of hours they actually worked or the actual hourly pay they received, they can rely on their own testimony and their average work schedule to establish the number of hours worked and the rate of pay received. *See Hernandez*, 2014 WL 12531531, at *3 ("As Plaintiff has discredited the accuracy of Defendants' time records, Plaintiff's affidavit that his average schedule was from 7 A.M. to 7 P.M. each day, Monday through Friday, with one Saturday each month, is sufficient to deny Defendants' Motion."); *Brown*, 2011 WL 3957771, at *7 ("Although Plaintiff largely submits her own testimony to demonstrate the amount and extent of unpaid work, the Court is satisfied that Plaintiff has produced a just and reasonable inference as to the amount of unpaid work, and that 'any inconsistency or uncertainty in [her] testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider.'"

*Id.*, at *5.

*Chen* accordingly suggests *Holaway* required a more demanding evidentiary showing than is typically required in the Eleventh Circuit. Moreover, the only in-circuit case Defendants cite, *Santiago*, is distinguishable. As discussed, *Santiago* granted the defendants renewed motion for judgment as a matter of law after declaring a mistrial. Put differently, *Santiago* found the plaintiff's evidence to be insufficient after the plaintiff rested their case at trial, not at summary judgment. 2015 WL 4454782, at *1. Plaintiff's deposition testimony is also considerably more precise than the plaintiff's "uncorroborated testimony that he 'sometimes' worked through lunch 'maybe once or twice per month[.]'" *Id.*, at *2. And unlike the defendants in *Santiago*, Defendants do not have "a detailed payroll register" to negate the reasonableness of Plaintiff's inference.[12] *Id.*, at *3.

---

[12] Defendants' Motion makes no attempt to negate the reasonableness of Plaintiff's estimated work hours. *See generally* ECF No. [55].

Here, Plaintiff's deposition testimony provides a general estimate of his average weekly work schedule. In the absence of contrary time records or similar evidence, Plaintiff's testimony is sufficient to defeat summary judgment. *Cf. Hernandez v. Quality Constr. Performance, Inc.*, No. 1:13-CV-23267-UU, 2014 WL 12531531, at *3 (S.D. Fla. May 6, 2014) ("As Plaintiff has discredited the accuracy of Defendants' time records, Plaintiff's affidavit that his average schedule was from 7 A.M. to 7 P.M. each day, Monday through Friday, with one Saturday each month, is sufficient to deny Defendants' Motion."). The Court is thus "satisfied that Plaintiff has produced a just and reasonable inference as to the amount of unpaid work," and concludes "any inconsistency or uncertainty in [her] testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider." *Brown v. Gulf Coast Jewish Fam. Servs., Inc.*, No. 810-CV-1749-T-27AEP, 2011 WL 3957771, at *7 (M.D. Fla. Aug. 9, 2011), *report and recommendation adopted*, No. 8:10-CV-1749-T-27AEP, 2011 WL 4005928 (M.D. Fla. Sept. 8, 2011) (internal quotation omitted). Plaintiff has accordingly "raised a genuine issue of material fact as to overtime hours[.]" *Murray v. Birmingham Bd. of Educ.*, 172 F. Supp. 3d 1225, 1239 (N.D. Ala. 2016).

### ii. Whether Defendants Knew Plaintiff Worked Overtime

Defendants also argue they are entitled to judgment because they neither knew nor should have known that Plaintiff worked overtime. Plaintiff responds that his deposition testimony, as well as the testimony of Serra and Viola, establish Defendants knew or should have known he worked overtime.

The second element of Plaintiff's FLSA overtime claims requires showing Defendants knew or should have known of his overtime work. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314-15 (11th Cir. 2007). "Knowledge may be imputed to the employer when its supervisors or management 'encourage [ ] artificially low reporting.'" *Bailey v. TitleMax of*

*Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (quoting *Allen*, 495 F.3d at 1319). "[A]n employer's knowledge is measured in accordance with his 'duty . . . to inquire into the conditions prevailing in his business." *Reich v. Dept. of Cons. and Nat. Res.,* 28 F.3d 1076, 1082 (quoting *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 512 (5th Cir. 1969) (internal quotation marks omitted)). "In reviewing the extent of an employer's awareness, a court 'need only inquire whether the *circumstances* . . . were such that the employer either had knowledge [of overtime hours being worked] or else had the opportunity through reasonable diligence to acquire knowledge.'" *Id.* (alterations in original).

Defendants contend the undisputed evidence establishes Plaintiff cannot prove they had actual or constructive notice of Plaintiff's overtime work. For support, they rely on Serra and Viola's testimony that Plaintiff never worked more than 40 hours per week. *See* ECF Nos. [54-1] at 79, [54-2] at 22-23. Defendants also rely on Plaintiff's deposition testimony providing that he never informed Defendants he felt he was entitled to overtime pay, that he never discussed overtime pay with Defendants, and that Plaintiff never punched a time clock while a salaried employee. ECF No. [50-1] at 61, 66-68, 78. Defendants also cite *Contini v. United Trophy Mfg.*, Inc., No. 6:06-CV-432-ORL-18UA, 2007 WL 1696030, at *3 (M.D. Fla. June 12, 2007) for support that "where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer . . . of the overtime work, the employer's failure to pay for the overtime hours is not a violation of" the FLSA. Plaintiff responds that his own deposition testimony establishes he routinely worked over 40 hours a week, and Viola and Serra's testimony support finding Defendants had constructive notice of his overtime work. Plaintiff points to Viola's testimony explaining he was there to supervise the employees making pizza dough when Plaintiff was not present, ECF No. [54-2] at 57, as well as Serra's testimony that Plaintiff was

typically already working at the Warehouse location when Serra arrived around 7:00 a.m. ECF No. [54-1] at 20.

The Court finds that whether Defendants had actual or constructive knowledge constitutes a genuine dispute of material fact. The Court is unpersuaded that *Contini* supports concluding Defendants are entitled to summary judgment because Plaintiff never informed them of his overtime work. *Contini* discussed the issue of actual notice "where an employee seeks to recover unpaid wages for overtime hours that the employee did not record on his time sheets[.]" 2007 WL 1696030, at *3. The court noted the plaintiff testified "that he could have, but chose not to, ask his supervisor for the two hours of overtime pay which he was owed" and that he was "always paid overtime when he indicated on his time sheet the hours that he had worked." *Id.* The court concluded that because the plaintiff "did not follow the company's rules for being granted overtime and, as a result, Defendant had no knowledge that Plaintiff was owed two hours of overtime compensation[,]" the defendants did not violate the FLSA's overtime provisions. *Id.*

Here, Plaintiff did not punch a time clock, and Defendants did not track Plaintiff's hours. The record indicates this occurred because Plaintiff believed doing so was unnecessary because he was a salaried employee, and because Defendants believe Plaintiff is exempt.[13] This case is thus distinguishable from *Contini*, as Plaintiff did not simply fail to adhere to Defendants overtime procedures, nor is there any evidence Defendants expected Plaintiff to adhere to those procedures. Furthermore, concluding Defendants had no constructive notice of Plaintiff's overtime work on this basis is inappropriate in light of the Eleventh Circuit's guidance that "a court 'need only inquire whether the *circumstances* . . . were such that the employer either had knowledge [of overtime hours being worked] or else had the opportunity through reasonable diligence to acquire

---

[13] The Parties' subjective beliefs about Plaintiff's status are largely irrelevant, as the FLSA's provisions are mandatory. *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352 (11th Cir. 1982).

knowledge.'" *Reich*, 28 F.3d 1076, 1082 (quoting *Gulf King Shrimp Co.,* 407 F.2d at 512). The Court accordingly agrees with Plaintiff that *Contini* provides no basis for granting summary judgment.

The Parties' conflicting deposition testimony makes clear whether Defendants knew or should have known Plaintiff worked overtime constitutes a genuine dispute of material fact. As discussed, Plaintiff effectively testified that working overtime was the norm. Viola and Serra conversely testified that Plaintiff did not work overtime. As Plaintiff accurately observes, however, Viola's and Serra's testimony regarding Plaintiff's work schedule creates a factual dispute as to whether they knew or should have known Plaintiff worked overtime. Viola testified that "[w]hen [Plaintiff], was not there . . . I was there supervising." ECF No. [54-2] at 57. Serra also testified that Plaintiff was typically already working at the Warehouse location when Serra arrived at 7 a.m. in the morning. ECF No. [54-1] at 20.

Taking Plaintiff's testimony regarding his weekly work schedule as true, Viola and Serra's testimony plainly supports the notion that Defendants knew or should have known Plaintiff worked overtime. At minimum, this evidence suggests Defendants "had the opportunity through reasonable diligence to acquire knowledge[]" of Plaintiff's overtime work. *Reich*, 28 F.3d 1076, 1082 (citation omitted). Assuming Plaintiff establishes he worked overtime without compensation at trial, this evidence can support a finding that Defendants had constructive notice that Plaintiff worked overtime. Because doing so will necessarily require evaluating the credibility of Plaintiff's, Viola's, and Serra's conflicting testimony, the Court concludes that whether Defendants had notice of Plaintiff's overtime work constitutes a genuine dispute of material fact.

Defendants have accordingly failed to meet their burden to show the undisputed evidence establishes Plaintiff is exempt from the FLSA's overtime provisions, that Plaintiff did not work overtime, or that Defendants knew or should have known of Plaintiff's overtime work.

### E.  Bad Faith or Willful FLSA Violations

Defendants also contend they are entitled to judgment because the undisputed evidence shows they did not act in bad faith nor willfully violate the FLSA. "Where an employer violates the FLSA, he is liable 'in the amount of the employee's unpaid overtime compensation and in an additional equal amount as liquidated damages.'" *Lewis v. Keiser Sch., Inc.*, No. 11-62176-CIV, 2012 WL 4854724 (S.D. Fla. Oct. 12, 2012) (quoting *Allen*, 495 F.3d at 1323). "An exception exists when the employer acted in good faith and had 'reasonable grounds for believing that he was not violating the Act.'" *Id.*; 29 U.S.C. § 260. "[I]n an FLSA case a jury's finding . . . that the employer acted willfully precludes the court from finding that the employer acted in good faith." *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1160 (11th Cir. 2008).

Defendants argue they are entitled to judgment on these issues because Plaintiff lacks any evidence indicating Defendants willfully violated the FLSA or otherwise acted in bad faith. As Plaintiff correctly points out, however, "[t]he issue of willfulness under § 255(a) is a question of fact for the jury not appropriate for summary disposition." *Morrison v. Quality Transports Services, Inc.*, 474 F. Supp. 2d 1303, 1313 (S.D. Fla. 2007) (citation omitted). Moreover, ruling on the issues of willfulness or bad faith is premature in light of the Court's conclusion that whether Defendants violated the FLSA constitutes a genuine dispute of material fact. Accordingly, "[b]ecause the issue of 'willfulness' is reserved for the jury at trial, the Court must also deny summary judgment as to whether [Defendants] acted in 'good faith' here." *Lewis*, 2012 WL 4854724, at *6.

Case No. 23-cv-21685-BLOOM/Torres

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment, **ECF No. [51]**, is **DENIED**.

2. Defendants' Motion for Summary Judgment, **ECF No. [55]**, is **DENIED**.

3. Plaintiff's claims under Counts I and II shall proceed against Defendants.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 2, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record